IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID WAYNE DECKER                                    PLAINTIFF

v.                              CIVIL NO. 20-05080

ANDREW SAUL, Commissioner                                DEFENDANT
Social Security Administration

## **MAGISTRATE JUDGE'S REPORT AND RECCOMENDATIONS**

Plaintiff, David Wayne Decker, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff protectively filed his current application for DIB on May 3, 2016, alleging an inability to work since November 12, 2014, due to depression, blood clots, dizziness, weakness, and Achilles tendon problems. (Tr. 21, 268). An administrative hearing was held on March 26, 2018, at which Plaintiff appeared with counsel and testified. (Tr. 21, 41-83).

On March 8, 2019, the ALJ issued an unfavorable decision. (Tr. 18). The ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe: degenerative changes of the thoracic and lumbar spine, dyspnea on exertion, essential tremor/extrapyramidal movement disorder, history of cardiac arrest due

1

to allergic reaction, right De Quervain's tenosynovitis, hypertension, history of near syncope, history of left Achilles tendonitis, history of deep vein thrombosis of a lower limb, obesity, and major depression. (Tr. 23-24). However, after reviewing all evidence presented, the ALJ determined that through the date last insured, Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 24-25). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs, he can never climb ladders, ropes, and scaffolds, he can occasionally balance, stoop, kneel, crouch, and crawl, he can frequently but not constantly, handle bilaterally; and he must avoid concentrated exposure to hazards including no driving as part of work. He is further capable of unskilled work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience, with several variables and use of judgment within limits, and the supervision required is little for routine tasks but detailed for non-routine tasks.
> (Tr. 25-31).

With the help of a vocational expert (VE), the ALJ determined that Plaintiff could not perform any of his past relevant work. (Tr. 31). However, the ALJ found Plaintiff could perform the duties of the representative occupations of cashier 2, price marker, and plastic molding machine tender. (Tr. 32).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which was denied on March 13, 2020. (Tr. 7-11).

Subsequently, Plaintiff filed this action. (Doc. 2). The parties have filed appeal briefs and this case is before the undersigned for report and recommendation. (Docs. 13, 14). The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**II.     Evidence Presented:**

At the administrative hearing held on March 26, 2018, Plaintiff testified that he was 51 years old with an eighth-grade education, and had tried twice to get a GED without success. (Tr. 48-49). Plaintiff testified that his work at Pace as a die setter ended after he had an Achilles tendon injury and was limited to working 8 hours per day by his doctor, but his employer would not agree to a deviation from the standard 12-hour shifts and instead let him go. (Tr. 54-56, 74). He did some work at Penmac for a short while as a machine operator and was let go when work slowed down. (Tr. 57). He continued to look for work at other factories, but when they found out about his history of cardiac arrest, they did not want to hire him. Id. Plaintiff testified his anxiety made it difficult to be in a room with a bunch of people, which he defined as more than 25 people. (Tr. 69). He testified his depression would cause him to just stay in his room all the time, and his Wellbutrin helped but did not completely eliminate the symptoms of his anxiety and depression. (Tr. 69-70). Plaintiff testified that his doctor had never recommended he go to counseling, and he never considered it himself. (Tr. 59, 80).

On May 26, 2016, Plaintiff was seen by Kevin Jackson, M.D., a physician who had been treating him since November 2013, for a medication checkup and he seemed to be doing somewhat better. (Tr. 879, 925). Plaintiff's vertigo had essentially resolved since the last visit, he had some nausea, and his depression was noted to be somewhat better. Id. Plaintiff reported feeling down more often than happy, having fragmented sleep, not feeling rested upon waking, anhedonia, and generalized anxiety. Id.

On August 10, 2016, Plaintiff was seen by Dr. Jackson for a medication checkup, and seemed to be doing well with his medications. (Tr. 927). His vertigo had essentially resolved,

3

his depression had improved, and his blood pressure was doing well. He still reported feeling down more often than happy, fragmented sleep, and anhedonia. Id.

On November 10, 2016, Plaintiff was seen by Dr. Jackson for a medication recheck and fasting labs. (Tr. 935). He reported three syncopal episodes in the past 3-4 weeks, which started without warning, and he would be out for a few minutes at a time. Id. He had not been able to work due to fear of syncope and was not driving, but neurology and cardiology workups in the past had not revealed the cause of the syncopal episodes. Id. His depression was noted to be stable and his reported symptoms were unchanged. Id.

On February 13, 2017, Plaintiff was seen by Dr. Jackson for fasting labs and reported his depression had been worse in the past three months and his meds were not helping. He was feeling very fatigued, and his sleep was more fragmented. (Tr. 937). Plaintiff's escitalopram was replaced with Wellbutrin. (Tr. 938-39).

On September 19, 2017, Plaintiff was seen by Dr. Jackson for a checkup and reported his left leg was still hurting and swelling, he was tolerating his medication Xarelto well, and his mood seemed unchanged. (Tr. 956). Plaintiff still reported being down more often than happy, fragmented sleep, and waking not feeling well rested. Id.

On April 30, 2018, after the administrative hearing, Plaintiff had a consultative examination with Dr. Ted Honghiran. (Tr. 985). A physical examination demonstrated that he was able to walk normally, with no limp. Id. He was able to dress and undress himself without assistance, and was able to get on and off of the examination table. (Tr. 986). Dr. Honghiran examined Plaintiff's left heel, and noted tenderness along the area of the Achilles tendon insertion but Dr. Honghiran did not see any defect and opined the tendon must have been completely healed. Id. The examination of the lumbar spine showed an ability to walk normal,

4

as well as on tiptoes and heels, negative straight leg raise on both sides, and normal reflex and sensation. Id. Dr. Honghiran gave the impression that Plaintiff has a history of chronic low back pain from degenerative disc disease process, and an Achilles tendon problem in the form of a partial tear that has now completely healed. (Tr. 986). Dr. Honghiran opined Plaintiff should be able to work, if not at the factory, then at some other full-time work. Id.

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but is enough that a reasonable mind could accept as adequate to support a conclusion. Ponder v. Colvin, 770 F.3d 1190, 1193-94 (8th Cir. 2014). The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964,966 (8th Cir. 2003). So long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F. 3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted for at least one year and that prevents him from engaging in substantial gainful activity. Pearsall

v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423 (d)(3), 1382(3)(C).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R § 404.1520.  While the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability and to demonstrate RFC both remain on the claimant. Stormo v. Barnhart, 377 F. 3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five").

**IV.     Discussion**

Plaintiff raises the following issues in this matter: 1) Whether the ALJ's physical RFC assessment contained findings inconsistent with Social Security ruling 96-9p, was self-contradictory, and was therefore not supported by substantial evidence; and 2) Whether the ALJ erred in making his mental RFC assessment, as the findings were contradictory and failed to expand upon the moderate limitations in social functioning the ALJ found in his psychiatric review technique. (Doc. 13).

6

### A. Physical RFC Determination:

Plaintiff argues the ALJ erred in his physical RFC determination because his limitation to only occasional balancing was inconsistent with the amount of standing and walking required for light work, thus making the RFC finding impermissibly vague. (Doc. 13, pp. 1-3). Plaintiff argues that as balancing is an essential activity for standing and walking, and occasional balancing means from very little up to one third of a workday, and light work requires a person to be on his feet six hours out of and 8-hour workday, the RFC is internally inconsistent. Plaintiff's argument is that one third of the workday would be under three hours, and Plaintiff could not possibly stand or walk for six hours if he was limited to balancing under three hours.

RFC is defined as the most that a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barhart, 393 F. 3d 798, 801 (8th Cir. 2005). Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

.

Plaintiff's argument overlooks the fact that a limitation to occasional balancing was an additional limitation added to light work, reducing Plaintiff from the full range of light work. The fact that Plaintiff could not perform the full range of light work is not in dispute, the ALJ did not find he could perform the full range of light work. The addition of limitations reducing the range of light work does not invalidate the RFC.

The ALJ appropriately consulted with a VE, as is required when limiting Plaintiff to less than the full range of light work, to determine the degree to which the additional limitations Plaintiff had would erode the unskilled light occupational base. (Tr. 26, 74-75). The VE provided three occupations which consist of light, unskilled work. (Tr. 74-75, 77). Further, the representative occupations provided by the VE, represented in the DOT as 211.462-010, 209.587-034, 556.685-082, clearly indicate that balancing was not present in any of these jobs.

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's physical RFC determination.

### B. Mental RFC Determination

Plaintiff argues the ALJ's mental RFC findings are also self-contradictory, as unskilled work was specified, but the additional limitations were those associated with semiskilled work. (Doc. 13, p. 4). Plaintiff also argues the ALJ erred by failing to make a function-by-function assessment of his capacity to perform work-related mental activities. Id. Plaintiff finally argues the ALJ's finding of a moderate limitation in the area of social functioning at step three was not properly accounted for in the RFC. (Doc. 13, pp. 5-6).

The ALJ made a function by function assessment of Plaintiff's mental abilities, as Plaintiff acknowledges in his argument. The ALJ did not simply limit Plaintiff to unskilled

8

work, but found additional more specific limitations including that interpersonal contact would be limited to routine but superficial, complexity of tasks limited to learned by experience with up to several variables and use of judgment within limits, and little supervision for routine tasks, but detailed supervision for non-routine tasks. (Tr. 25). Further, Plaintiff does not identify any specific limitations the ALJ did not account for, or provide argument as to why the above restrictions were not sufficient to account for his limitations. (Doc. 13, pp. 3-6).

At the hearing, Plaintiff's counsel questioned the ALJ's inclusion in the hypothetical to the VE of: limited to interpersonal contact which is routine but superficial, complexity of tasks learned by experience with several variables and use of judgment within limits; the reasoning required is little for routine tasks but detailed for nonroutine tasks. (Tr.75). Plaintiff's counsel asked "[D]id you start off saying unskilled work and then give a semi-skilled RFC?" and the ALJ responded by explaining that normally the state agency doctors say those limitations equate to semi-skilled, but that he wanted the VE to assume it equates to unskilled work. (Tr. 75). The VE provided three jobs, all of which were unskilled light duty work: Cashier II (DOT 211.462-010), price marker (DOT 209.587-034), and plastics molding machine tender (DOT 556.685-082). Each of these jobs had in excess of 200,000 jobs in the national economy. (Tr. 77).

Plaintiff cites 20 CFR §§404.1568, 416.968 and SSR 83-10, which all contain a definition of unskilled work that is not necessarily incompatible with the RFC findings in this case "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength…" Plaintiff does not provide a detailed argument as to how the ALJ's RFC findings are incompatible with this definition of unskilled work, but rather points to the opinion

9

evidence provided by Dr. Santulli. (Doc. 13, p. 4). Dr. Santulli opined that Plaintiff had moderate limitations in concentration, persistence, or pace (CCP) and was capable of work where interpersonal contact is routine but superficial, e.g., grocery checker; complexity of tasks is learned by experience, several variables, judgment within limits; supervision required is little for routine but detailed for nonroutine. Semiskilled. (Tr. 109). This line of argument ultimately is moot, as the Step Five findings were based upon jobs with an unskilled rating and Plaintiff does not argue that he was unable to perform even unskilled work. (Tr. 32).

Plaintiff argues the ALJ erred by failing to account for the moderate limitations in social interaction he found at Step Two in his RFC assessment. (Doc. 13, pp. 5-6). Plaintiff argues that this error is not harmless as it renders the RFC assessment incomplete and because one of the jobs identified at Step 5, Cashier II, contains a P temperament code signifying the occupation requires dealing with people beyond giving and receiving instructions. Id. Plaintiff ignores the fact that the ALJ did, in fact, include restrictions addressing Plaintiff's limitations in interacting with others. The ALJ addressed this limitation by restricting Plaintiff to work where interpersonal contact is routine but superficial. (Tr. 25).

Plaintiff's argument regarding temperament codes does not provide a basis for reversal. The ALJ specifically asked the VE whether his testimony was consistent with the information found in the Dictionary of Occupation Titles, and the VE testified that it was. (Tr. 79). Further, even if we were to accept the additional information in the online resource (which contains temperament codes not present in the print editions of the DOT or SCO), and thus find the VE's evidence regarding the cashier II position appears to conflict with the DOT or SCO, this would not be reversible error as the ALJ also relied on two additional jobs identified by the VE, price marker and plastics molding machine tender. (Tr. 32). Neither of these positions

10

contain a "P" Temperament code. See DOT 209.587-034, 1991 WL 671802; DOT 556.685-082, 1991 WL 683493. Thus, the ALJ's error, if any, is harmless because the VE cited other jobs. *See Grable v. Col*vin, 770 F.3d 1196, 1202 (8th Cir. 2014) (a VE's "mistaken recommendation" can be harmless error where the VE has recommended other work that a claimant can perform with her RFC); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to show error was not harmless, plaintiff must provide indication that ALJ would have decided differently had error not occurred); *Van Vickle*, 539 F.3d at 830.

Accordingly, the Court finds the ALJ did not commit reversible error by failing to incorporate his Step Two finding of a moderate limitation in social interaction into the RFC findings.

### V. Conclusion

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. §636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of January 2021.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE

11